**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**STACEY FULLER, 07561-055,**

                                        **Plaintiff,**                    **03-CV-0514(Sr)**

**v.**

**JAMES E. HOHENSEE, et al.,**

                                        **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #10.

Currently before the Court is defendants' motion for summary judgment. Dkt. #41.  Defendants filed their motion on August 18, 2004.  Notwithstanding notification by both the Western District of New York Pro Se Office and counsel for the defendants concerning the requirements of Rule 56 of the Federal Rules of Civil Procedure and the perils of failing to respond to a motion for summary judgment, including that such failure may result in the granting of judgment in favor of defendants, as required under *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001),

plaintiff has failed to file a response to the instant motion.[1]  Dkt. #41-23; Dkt. #42.  For

the following reasons, defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed this action on July 8, 2003,

pursuant to 42 U.S.C. § 1983, seeking compensatory damages for inadequate medical

(dental) treatment during his incarceration at the Niagara County Jail, in violation of his

constitutional rights under the Eighth and Fourteenth Amendments to the United States

Constitution.  Dkt. #1.[2]  Specifically, plaintiff complains that while he was incarcerated at

the Niagara County Jail, defendants, Dr. James E. Hohensee and Nurse Practitioner

Christopher Aikin failed to treat plaintiff's dental pain, *to wit*, defendants failed to timely

schedule oral surgery for the removal of plaintiff's lower wisdom teeth.  Dkt. #1.

---

[1] A Case Management Order was entered by the Court on January 13, 2004.
Dkt. #13.  Pursuant to the Case Management Order, dispositive motions were to be
filed on or before August 31, 2004, responding papers were due on or before
September 17, 2004 and replies were due on or before September 29, 2004.  During a
Status Conference held on March 11, 2004, the parties were directed by the Court to
abide by the current Case Management Order [Dkt. #13].  Dkt. #23.  Plaintiff was
present, via telephone, during the January 13, 2004 and March 11, 2004 Status
Conferences.

[2] Plaintiff's claims against Thomas A. Beilein in his official capacity as the
Niagara County Sheriff and plaintiff's claims against Dr. James E. Hohensee and Nurse
Practitioner Christopher Aikin in their official capacities were dismissed on October 17,
2003, by United States District Judge Charles J. Siragusa pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A.  Dkt. #3.  Plaintiff's claims against Dr. Hohensee and
Nurse Practitioner Aikin in their individual capacities remain and are the subject of the
instant motion for summary judgment.

**Plaintiff's Dental Care**

Beginning on or about February 21, 2002, plaintiff was incarcerated at the Niagara County Jail.  Dkt. #1, p.2; Dkt. #41-24, ¶ 1.  A medical history and physical exam form was completed and signed by plaintiff on or about February 20, 2002; at that time, plaintiff did not complain of any dental problems, dentures, pain or decay.  Dkt. #41-6, pp.9-10; Dkt. #41-16, ¶ 11.  At all times relevant herein, all regular dental services for inmates housed at the Niagara County Jail were provided by Founders Clinic, an outside contractor, and at that time, only three inmates per week were taken for treatment at Founders Clinic.  Dkt. #41-13, ¶ 13; Dkt. #41-16, ¶ 14.

On or about March 12, 2002, at approximately 10:00 p.m., plaintiff, using a pre-printed Niagara County Jail Informal Complaint Sheet, submitted a handwritten "sick call request."  Dkt. #41-6, p.18.  Because the request did not indicate a medical reason for the request, the form was returned to plaintiff and plaintiff was advised that he needed to specify the nature of his complaint.  Dkt. #41-13, ¶ 11; Dkt. #41-16, ¶ 13.

On or about May 5, 2002, plaintiff completed a Niagara County Jail Request/Complaint Form for the medical department stating, "I am in a lot of pain.  My wisdom tooth is coming [sic] up."  Dkt. #41-5, p.6.  Absent severe trauma to the teeth from, for example, an accident or a fight, an inmate at the Niagara County Jail with a dental complaint would be provided with a Founders Clinic health form to be completed.  Once the form was completed and returned to the infirmary, the inmate would be placed on the waiting list to see the dentist.  Dkt. #41-13, ¶ 12; Dkt. #41-16, ¶ 15.  If a

particular inmate's condition was so serious, that inmate would be moved ahead on the list as medically necessary.  Dkt. #41-16, ¶ 15.

Consistent with the Niagara County Jail policy in effect at the time and in order to receive treatment, on or about May 8, 2002, plaintiff completed a Founders Clinic health form setting forth his medical and dental history.  Dkt. #41-11, p.1; Dkt. #41-13, ¶ ¶ 12 and 14; Dkt. #41-16, ¶¶ 15-16.  On the form, plaintiff stated that the reason for his visit was "wisdom teeth pain" and that his last dental visit was in November 2001 and that he was supposed to have had oral surgery to remove his lower wisdom teeth.  Dkt. #41-11, p.1.  Thereafter, plaintiff attended an appointment with Dr. Bates at the Founders Clinic on July 1, 2002.   Dkt. #41-13, ¶ 14; Dkt. #41-16, ¶ 17.

After seeing plaintiff, Dr. Bates returned a Niagara County Jail Medical Department Referral Form to the Niagara County Jail infirmary indicating that an oral surgeon would need to extract plaintiff's teeth #17 and #32 and prescribed over the counter Tylenol (not a more potent anti-inflammatory or narcotic) as needed for pain; Dr. Bates, did not, however, note on the Referral Form that surgery needed to be done immediately.  Dkt. #41-6, p.23; Dkt. #41-13, ¶ 15; Dkt. #41-16, ¶ 18; *see also* Dkt. #41-11, p.2.  Moreover, Dr. Bates did not make any finding that plaintiff's wisdom teeth were infected or that plaintiff's condition was in danger of degrading if surgery was not performed immediately.  Dkt. #41-13, ¶ 15; Dkt. #41-16, ¶ 18.  Both Dr. Hohensee and Nurse Practitioner Aikin initialed the Referral Form.  *Id*.

-4-

Wisdom teeth are a common problem at the Niagara County Jail and do not always require immediate medical treatment.  Dkt. #41-16, ¶ 19.  The policy at the Niagara County Jail concerning wisdom teeth was that, absent infection, instability or other significant problems, the inmate would generally be responsible for seeking treatment after release from jail.  Dkt. #41-13, ¶ 16; Dkt. #41-16, ¶ ¶ 19 and 20.  If, however, the tooth or teeth became unstable or infected, a referral would be made to an oral surgeon.  *Id*.  There was no practice at the Niagara County Jail that prevented an inmate from requesting to be seen at sick call and to have his teeth reassessed by jail staff.  Dkt. #41-16, ¶ 20.

Plaintiff alleges that from July 2002 to October 30, 2002, he made repeated requests for medical treatment and/or medication due to pain caused by his wisdom teeth.  Dkt. #1, pp.3-4.  Although not specifically referenced in the Complaint, plaintiff attached to the Complaint, as part of Exhibit D, two Niagara County Jail Informal Complaint[3] Sheets with the handwritten dates July 2, 2002 and July 3, 2002.  Dkt. #1, Exhibit D.  Both of these forms purport to be signed by plaintiff, however, the line for the Housing Officer's signature is blank.  *Id*.  Notably, Sergeant Duane Vendetta, Records Sergeant, Niagara County Jail, conducted a review of plaintiff's file maintained at the Niagara County Jail and plaintiff's file does not include the original of

---

[3] The pre-printed forms are titled Niagara County Jail Informal Complaint Sheet, however, on each form attached to the Complaint, the word Complaint is crossed out and handwritten over it is the word "Request."

either of these forms dated July 2, 2002 and July 3, 2002.  Dkt. #41-15, ¶¶ 12 - 14.

Accordingly, there is no evidence to indicate that these forms, dated July 2, 2002, and

July 3, 2002, were ever properly submitted by plaintiff for processing.  *Id*. at ¶ 16.


On or about October 14, 2002, plaintiff did submit a Niagara County Jail

Request Form stating:

> I would like to see a doctor pertaining to my wisdom teeth
> that is and has been causing me severe pain for a very long
> time and I have continually requested to see a doctor but
> have not been called to sick call. Can you please call me
> because I am [sic] a lot of pain.

Dkt. #1, Exhibit D; Dkt. #41-16, ¶ 26.  Also on or about October 14, 2002, plaintiff

submitted a Niagara County Jail Complaint Form stating:

> I would like to know why you have decided to not schedule
> me to see an oral surgeon as recommended by the dentist
> months ago and should I now consider such decision to be
> final?  Please respond to this complaint.  I have written to
> the Medical Dept and yourself several times and have not
> been responded to.

Dkt. #1, Exhibit D.  Plaintiff also submitted a Niagara County Jail Complaint Form on or

about October 17, 2002, stating:

> I request sick call because both my wisdom tooth [sic] still
> are causing me a tremendos [sic] amount of pain and my left
> wisdom tooth is cutting into my cheek.  You sent me a form
> to fill out. I already filled that form out months ago and was
> seen by the dentist who diagnosed me to see an oral
> surgeon due to the difficult way that my wisdom tooth [sic]
> were coming up.  I have not been taken to the oral surgeon,
> have been in a great deal of pain, have told you about this
> on many occasions and need to see someone immediately.
> I can't keep on taking tylenols.  I'm in a lot of pain.

Dkt. #1, Exhibit D; Dkt. #41-16, ¶ 26.  The processing of sick call requests is completed by the evening nursing shift.  Dkt. #41-24, ¶ 6.  Neither Dr. Hohensee nor Nurse Practitioner Aikin were aware that plaintiff was allegedly complaining about his wisdom teeth or that plaintiff had submitted sick call requests on October 14, 2002 and October 17, 2002.  Dkt. #41-13, ¶ 18; Dkt. #41-16, ¶ 24.

Plaintiff was scheduled for a sick call on October 25, 2002, however, because plaintiff was in court on that date, his appointment was re-scheduled for October 30, 2002.  Dkt. #41-13, ¶ 20, Dkt. #41-16, ¶ 26.  Plaintiff was indeed seen in the infirmary on October 30, 2002, and was examined by both Dr. Hohensee and Nurse Practitioner Aikin.  Dkt. #41-13, ¶ 21; Dkt. #41-16, ¶ 27.  It was noted that one of plaintiff's wisdom teeth was partially erupted on the lower left side; plaintiff also complained of a foul taste in his mouth and although there was no overt evidence of an infection, as a precaution, plaintiff was prescribed an antibiotic and Motrin for pain.  Dkt. #41-13, ¶ 21; Dkt. #41-16, ¶ 27.  Because an infection was possible, plaintiff was referred to an oral surgeon and an appointment was made for November 19, 2002. Dkt. #41-16, ¶ 28.  Plaintiff returned to the infirmary on November 13, 2002 complaining of neck pain and numbness unrelated to his dental problems.  Dkt. 41-13, ¶ 22. Plaintiff was given stretching exercises, additional Motrin, and an extra pillow and mattress.  *Id*.

Plaintiff was seen by the oral surgeon, Dr. Donnarumma, on November 19, 2002, and his two lower wisdom teeth were removed; Dr. Donnarumma did not note

any complications or the presence of any infection.  Dkt. #41-13, ¶ 23; Dkt. #41-16, ¶

29.  As a follow-up, plaintiff was seen by Dr. Donnarumma on November 26, 2002, and

it was noted that plaintiff was healing well.  Dkt. #41-13, ¶ 24; Dkt. #41-16, ¶ 29.

Plaintiff made no further complaints and no further visits to the infirmary concerning his

teeth during the remaining period of his incarceration at the Niagara County Jail.  Dkt.

#41-13, ¶ 24; Dkt. #41-16, ¶ 30.


**<u>Plaintiff's "Grievance"</u>**

Plaintiff alleges in his Complaint that he filed a grievance, however,

because he was advised on October 30, 2002 that he would be seeing an oral surgeon,

plaintiff further alleges that he "did not appeal his grievance."  Dkt. #1, p.8.  On October

20, 2002 and October 22, 2002, plaintiff claims to have submitted Informal Complaint

Sheets requesting copies of his medical records as they related to his "diagnosis" on

July 1, 2002.  Dkt. #41-18, pp.10-11.  Thereafter, plaintiff alleges that he submitted a

Grievance Form dated October 27, 2002.  Dkt. #41-18, p.12.  The October 27, 2002

Grievance Form is a request for copies of plaintiff's medical records and a request to be

seen by the medical department concerning his back.  Dkt. #41-14, ¶ 14; Dkt. #41-18,

p.12.   Sergeant Thomas R. Drehs, the Grievance Coordinator at the Niagara County

Jail, was unable to locate any evidence that the October 27, 2002 Grievance Form was

ever submitted by plaintiff.  Dkt. #41-14, ¶ 14; Dkt. #41-18, p.12.  According to Sergeant

Drehs, had the Grievance Form been submitted, it would have been signed with a

written disposition before being returned to the inmate.  Dkt. #41-14, ¶ 14.

On November 6, 2002, plaintiff again submitted a Niagara County Jail Request Form seeking a copy of the dental diagnosis made on July 1, 2002.  Dkt. #41-18, p.13.  Plaintiff submitted a Niagara County Jail Informal Complaint Sheet dated November 10, 2002, that purports to have been signed by Officer Chapman, Niagara County Jail Housing Officer.  Dkt. #41-18, p.14.  There is a large handwritten X over the entire text of the description of the complaint; neither plaintiff nor defendants offer any explanation as to whether this document was ever properly submitted.  On this form, plaintiff complains of pain and requests an explanation as to why he had to endure so much pain and why he was not taken to see an oral surgeon.  Dkt. #41-18, p.14.

Plaintiff alleges he submitted a second Grievance Form dated November 17, 2002, which purports to have been signed by Officer Chapman.  Dkt. #41-14, ¶ 15; Dkt. #41-18, p.15.  In this grievance, plaintiff requested action concerning an alleged lack of dental care.  *Id*.  Upon receipt of the grievance, Sergeant Drehs sent a memo to plaintiff stating that the grievance could not be processed because plaintiff had failed to submit all parts of the triplicate form.  Dkt. #41-14, ¶ 16; Dkt. #41-19, p.1.  Specifically, the memo to plaintiff states that Sergeant Drehs needs all copies (white, yellow and pink) of the grievance.  *Id*.  Sergeant Drehs was unable to locate any evidence that plaintiff ever re-submitted the grievance form.  Dkt, # 41-14, ¶ 20.  In his Complaint, plaintiff states that he did not "appeal" the denial of his grievance as submitted, because he had been assured by Sergeant Drehs that he would be seeing an oral surgeon.  Dkt. #1, p.8.  Notwithstanding this admission and the documentary evidence to the contrary, plaintiff claims that he exhausted all of his administrative remedies.  *Id*.

-9-

## DISCUSSION AND ANALYSIS

Defendants argue that they are entitled to summary judgment because (1) plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA") and (2) plaintiff failed to establish that he suffered from a sufficiently serious medical condition and that defendants were deliberately indifferent to plaintiff's medical needs.  In the alternative, defendants argue that they are entitled to qualified immunity insofar as they acted in good faith and that it was objectively reasonable for them to believe that they were not violating plaintiff's constitutional rights.  Because the Court agrees that the defendants are entitled to judgment as a matter of law on the grounds that plaintiff failed to exhaust his administrative remedies and failed to establish that he suffered from a sufficiently serious medical condition and that defendants were deliberately indifferent to his medical needs, the Court need not reach the issue of whether defendants are entitled to qualified immunity.

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

The failure of a litigant who moves for summary judgment against a *pro se* party to provide the *pro se* party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure and the consequences of noncompliance therewith will result in the vacatur of summary judgment. *Irby v. New York City Transit Authority*, 262 F.3d 412, 413 (2d Cir. 2001). Rule 56 requires that,

> [a]n adverse party may not rest upon the mere allegations or denials of the ... pleading, but [rather] the ... response, by affidavits or [other documentary evidence] as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e).

Here, consistent with Local Rule 56.2, defendants provided plaintiff with notice of the requirements of Rule 56 and the possible consequences of failure to respond to a summary judgment motion. Dkt. #41-23. Similarly, plaintiff received a notice from the Western District of New York Pro Se Office explaining, in detail, the requirements of Rule 56 and that failure to respond may result in the granting of judgment in favor of the party seeking summary judgment. Dkt. #42. Thus, there can be no dispute that in addition to plaintiff's presence during the Scheduling Conferences and his knowledge and receipt of the Case Management Order, plaintiff received actual notice of the consequences of his failure to comply with the requirements of Rule 56 and failure to respond to a summary judgment motion. As provided in Local Rule 56.1(c), all material facts set forth in defendants' Local 56.1 Statement of Facts [Dkt.

#41-24], will be deemed admitted because such statements were "not controverted by the statement required to be served by [plaintiff]."  Local Rule 56.1(c).

## Exhaustion of Administrative Remedies

Defendants allege that plaintiff has failed to exhaust his administrative remedies with respect to his claim that he was denied adequate dental treatment.  Dkt. #41-21, p.1-2.  Indeed, based on the record before the Court, there is no evidence to suggest that the plaintiff ever properly submitted a grievance, much less exhausted his administrative remedies.  In support of defendants' motion for summary judgment, Sergeant Thomas R. Drehs attached to his affidavit a memo to plaintiff stating that because plaintiff had failed to submit the November 17, 2002 grievance in triplicate, as required, the grievance could not be processed.  Dkt. #41-14, ¶ 16; Dkt. #41-19, p.1. Sergeant Drehs further states that there was no record that plaintiff ever re-submitted his grievance.  Dkt, # 41-14, ¶ 20.   Moreover, in his Complaint, plaintiff unequivocally admits that because he was assured by Sergeant Drehs on or about October 30, 2002 that he would be seen by an oral surgeon, "[p]laintiff did not appeal his grievance."  Dkt. #1, p.8.  There was no "grievance to appeal" since the undisputed facts in the record before this Court clearly establish that plaintiff failed to properly submit the required grievance form for processing.

The PLRA states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that exhustion of administrative remedies in 1997(e) cases is mandatory[4] and should be applied broadly.  *Id.* at 524. The *Nussle* Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues.  *Id.* at 524-25.  "Even when the prisoner seeks relief not available in grievance proceedings" – such as monetary damages – "exhaustion is a prerequisite to suit."  *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532.

The New York State Department of Correctional Services employs a three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee as set forth in 7 N.Y.C.R.R. § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the

---

[4] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate.  *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

Inmate Grievance Resolution Committee's adverse written response as set forth in 7

N.Y.C.R.R. § 701.7(b)(1); and appeal to the Central Office Review Committee in

Albany, New York within four working days of receipt of the superintendent's adverse

written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1).  *Abney v. McGinnis*, 380

F.3d 663  (2d Cir. 2004).


      In assessing what constitutes exhaustion of administrative remedies, the

Court of Appeals for the Second Circuit determined that

> a three-part inquiry is appropriate in cases where a prisoner
> plaintiff plausibly seeks to counter defendants' contention
> that the prisoner has failed to exhaust available
> administrative remedies as required by the PLRA, 42 U.S.C.
> § 1997e(a).  Depending on the inmate's explanation for the
> alleged failure to exhaust, the court must ask whether
> administrative remedies were in fact "available" to the
> prisoner.  *Abney v. McGinnis*, 380 F.3d 663 . . . . The Court
> should also inquire as to whether the defendants may have
> forfeited the affirmative defense of non-exhaustion by failing
> to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 . .
> ., or whether the defendants' own actions inhibiting the
> inmate's exhaustion of remedies may estop one or more of
> the defendants from raising the plaintiff's failure to exhaust
> as a defense, *Ziemba*,[5] 366 F.3d at 163.  If the court finds
> that administrative remedies were available to the plaintiff,
> and that the defendants are not estopped and have not
> forfeited their non-exhaustion defense, but that plaintiff
> nevertheless did not exhaust available remedies, the court
> should consider whether "special circumstances" have been
> plausibly alleged that justify "the prisoner's failure to comply
> with administrative procedural requirements." *Giano v.
> Goord*, 380 F.3d 670. . . .

*Hemphill v. New York,* 380 F.3d 680, 686  (2d Cir. 2004).

---

[5] *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004).

In the instant case, the undisputed facts are that plaintiff completed a partial Grievance Form on or about November 17, 2002, and attempted to submit it. However, because plaintiff failed to submit the entire triplicate Grievance Form, Sergeant Drehs advised plaintiff that in order to process the grievance, he needed all copies of the grievance, "[e]xample: White, Yellow, Pink copy."  Dkt. #41-19, p.1. Thereafter, plaintiff failed to re-submit the complete grievance form.  Thus, absent a properly submitted Grievance Form, the grievance could not be investigated and no decision would be rendered.  Dkt. #41-14, ¶ 21.  Even assuming for purposes of argument that plaintiff had properly submitted a grievance, plaintiff readily admits that he did not appeal from the denial of his grievance as submitted.  Dkt. #1, p. 8. Accordingly, the Court concludes that defendants have demonstrated their entitlement to judgment as a matter of law on the basis that plaintiff failed to exhaust his administrative remedies.

**Deliberate Indifference to Serious Medical Needs**

In *Estelle v. Gamble*, the Supreme Court of the United States determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution.  429 U.S. 97, 104 (1976).  To establish such a claim, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.), *cert. denied*, 513 U.S. 1154 (1995).

-16-

In assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.*

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003), *quoting Chance*, 143 F.3d at 702. Moreover, although an Eighth Amendment violation may be based upon exposure to an unreasonable risk of future harm, "the absence of present physical injury will often be probative in assessing the risk of future harm." *Smith*, 316 F.3d at 188. "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187.

Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See Chance*, 143 F.3d at 703. The Second Circuit in *Chance* also observed,

> [a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, *see Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1994) ("severe pain" due to infected tooth), the deterioration of the teeth due to a lack of treatment, *see Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three week delay in dental treatment aggravated problem), or the inability to engage in normal activities, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff complained that he was unable to eat properly); *cf. Dean v. Coughlin*, 623 F.Supp. 392, 404 (S.D.N.Y. 1985) (holding that "dental needs-for fillings, crowns, and the like-are serious medical needs as the law defines that term"), *vacated on other grounds*, 804 F.2d 207 (2d Cir. 1986).

*Chance*, 143 F.3d at 703.

With respect to the defendant's state of mind, it is clear that "a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66, *citing Farmer*, 511 U.S. at 835. Accordingly,

> It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as

-18-

> the treatment given is adequate, the fact that a prisoner
> might prefer a different treatment does not give rise to an
> Eighth Amendment violation.  Moreover, negligence, even if
> it constitutes medical malpractice, does not, without more,
> engender a constitutional claim.

*Chance*, 143 F.3d at 703 (internal citations omitted).


Plaintiff first complained about pain from his wisdom teeth on or about

May 5, 2002.[6]  Dkt. #41-5, p.6.  Because plaintiff's dental complaint was not related to

severe trauma, plaintiff was provided with a Founders Clinic health form to be

completed and returned to the infirmary and consistent with policy, plaintiff would then

be placed on the waiting list to see the dentist.   Dkt. #41-13, ¶ 12; Dkt. #41-16, ¶ 15.

Three days later, on or about May 8, 2002, plaintiff completed the Founders Clinic

health form stating that the reason for his visit was "wisdom teeth pain" and that his last

dental visit was in November 2001 and that he was supposed to have had oral surgery

to remove his lower wisdom teeth.   Dkt. #41-11, p.1.  Thereafter, plaintiff attended an

appointment with Dr. Bates at the Founders Clinic on July 1, 2002.   Dkt. #41-13, ¶ 14;

Dkt. #41-16, ¶ 17.


Dr. Bates indicated that an oral surgeon would need to extract plaintiff's

teeth #17 and #32 and plaintiff was prescribed Tylenol as needed for pain.  Dkt. #41-6,

---

[6] The record does, however, reflect that on or about March 12, 2002, at
approximately 10:00 p.m., plaintiff, using a pre-printed Niagara County Jail Informal
Complaint Sheet, submitted a handwritten "sick call request".  Dkt. #41-6, p.18.
Because the request did not indicate a medical reason for the request, the form was
returned to plaintiff and plaintiff was advised that he needed to specify the nature of his
complaint.  Dkt. #41-13, ¶ 11.

p.23; Dkt. #41-13, ¶ 15; Dkt. #41-16, ¶ 18.  Dr. Bates did not make any finding that

plaintiff's wisdom teeth were infected or that plaintiff's condition was in danger of

degrading if surgery was not performed immediately.  Dkt. #41-13, ¶ 15; Dkt. #41-16, ¶

18.  Neither plaintiff in his Complaint nor defendants in their motion for summary

judgment allege any facts to suggest that during the intervening time between plaintiff's

first dental complaint on May 5, 2002 and his July 1, 2002 dental appointment that

plaintiff made any additional sick call requests or complaints of pain.


Plaintiff alleges that from July 2002 to October 30, 2002, he made

repeated requests for medical treatment and/or medication due to pain caused by his

wisdom teeth.  Dkt. #1, pp.3-4.  Although not specifically referenced in the Complaint,

plaintiff attached to the Complaint as part of Exhibit D, Niagara County Jail Informal

Complaint[7] Sheets with the handwritten dates July 2, 2002 and July 3, 2002.  Dkt. #1,

Exhibit D.  Sergeant Duane Vendetta, Records Sergeant, Niagara County Jail,

conducted a review of plaintiff's file maintained at the Niagara County Jail and plaintiff's

file does not include the original of these forms.  Dkt. #41-15, ¶¶ 12 and 13.

Accordingly, there is no evidence to indicate that these forms, dated July 2, 2002 and

July 3, 2002, were ever properly submitted by plaintiff for processing.  *Id*. at ¶ 16.  The

undisputed evidence before this Court is that the first complaint properly submitted by

---

[7] The pre-printed forms are titled Niagara County Jail Informal Complaint Sheet,
however, the word Complaint is crossed out and handwritten over it is the word
"Request."

plaintiff following his July 1, 2002 dental visit was submitted on or about October 14,

2002.

On or about October 14, 2002, plaintiff did submit a Niagara County Jail

Request Form stating:

> I would like to see a doctor pertaining to my wisdom teeth
> that is [sic] and has [sic] been causing me severe pain for a
> very long time and I have continually requested to see a
> doctor but have not been called to sick call. Can you please
> call me because I am [sic] a lot of pain.

Dkt. #1, Exhibit D; Dkt. #41-16, ¶ 26.  Three days later, on or about October 17, 2002,

plaintiff submitted a Niagara County Jail Complaint Form stating:

> I request sick call because both my wisdom tooth [sic] still
> are causing me a tremendos [sic] amount of pain and my left
> wisdom tooth is cutting into my cheek.  You sent me a form
> to fill out. I already filled that form out months ago and was
> seen by the dentist who diagnosed me to see an oral
> surgeon due to the difficult way that my wisdom tooth [sic]
> were coming up.  I have not been taken to the oral surgeon,
> have been in a great deal of pain, have told you about this
> on many occasions and need to see someone immediately.
> I can't keep on taking tylenols.  I'm in a lot of pain.

Dkt. #1, Exhibit D; Dkt. #41-16, ¶ 26.  The processing of sick call requests is completed

by the evening nursing shift.  Dkt. #41-24, ¶ 6.  Neither Dr. Hohensee nor Nurse

Practitioner Aikin were aware that plaintiff was allegedly complaining about his wisdom

teeth or that plaintiff had submitted sick call requests on October 14, 2002 and October

17, 2002.  Dkt. #41-13, ¶ 18; Dkt. #41-16, ¶ 24.

Plaintiff was scheduled for a sick call on October 25, 2002, however, because plaintiff was in court on that date, his appointment was re-scheduled for October 30, 2002.  Dkt. #41-13, ¶ 20, Dkt. #41-16, ¶ 26.  Plaintiff was indeed seen in the infirmary on October 30, 2002, approximately two weeks from his October 14, 2002 and October 17, 2002 complaints, and was examined by both Dr. Hohensee and Nurse Practitioner Aikin.  Dkt. #41-13, ¶ 21; Dkt. #41-16, ¶ 27.  It was noted that one of plaintiff's wisdom teeth was partially erupted on the lower left side; plaintiff also complained of a foul taste in his mouth and although there was no overt evidence of an infection, as a precaution, plaintiff was prescribed an antibiotic and Motrin for pain.  Dkt. #41-13, ¶ 21; Dkt. #41-16, ¶ 27.  Because an infection was possible, plaintiff was referred to an oral surgeon and an appointment was made for November 19, 2002, less than three weeks after plaintiff was seen by Dr. Hohensee and Nurse Practitioner Aikin.  Dkt. #41-16, ¶ 28.  Plaintiff was seen by the oral surgeon, Dr. Donnarumma, on November 19, 2002 and his two lower wisdom teeth were removed; Dr. Donnarumma did not note any complications or the presence of any infection.  Dkt. #41-13, ¶ 23; Dkt. #41-16, ¶ 29.  As a follow-up, plaintiff was seen by the oral surgeon on November 26, 2002, and it was noted that plaintiff was healing well.  Dkt. #41-13, ¶ 24; Dkt. #41-16, ¶ 29.  Plaintiff made no further complaints and no further visits to the jail infirmary concerning his teeth during the remaining period of his incarceration at the Niagara County Jail.  Dkt. #41-13, ¶ 24; Dkt. #41-16, ¶ 30.

The instant case concerns only the delay in scheduling plaintiff's appointment with an oral surgeon.  While dental pain and toothaches can be

excruciatingly painful and proper dental care is an important part of overall health, short,
intermittent delays in appointment times, absent any indication of serious infection or
aggravation of the condition and absent any knowledge of the inmate's complaints or
suffering, cannot support a finding of an Eighth Amendment violation under section
1983.  Here, there is no evidence to suggest that defendants had any knowledge of
plaintiff's complaints or suffering.  Moreover, when there was the possibility of infection,
despite a lack of any overt evidence of an infection, plaintiff was prescribed an antibiotic
and referred to an oral surgeon.  After performing the extraction less than three weeks
later, the oral surgeon did not note any complications or evidence of infection.  As the
undisputed evidence in the record unequivocally demonstrates, each time plaintiff
properly submitted a sick call request or complaint, immediate measures were taken to
either have the patient seen by the outside dental contractor, the infirmary staff or the
oral surgeon.  Therefore, his claim of deliberate indifference to his medical (dental)
needs in violation of his Eighth Amendment right is without merit.

**<u>CONCLUSION</u>**


For the foregoing reasons, defendants' motion for summary judgment (Dkt. #41) is **GRANTED.**


The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.


**SO ORDERED.**


DATED:      Buffalo, New York
            November 5, 2008


**<u>s/ H. Kenneth Schroeder, Jr.</u>**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**